UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 11-02925 |
|---|---|
| MEL D. HORNER, | Chapter 13 |
| Debtor. | Related Docket Nos. 34, 57, 59 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON VALUATION OF COLLATERAL**

On July 2, 2012, the court held an evidentiary hearing on confirmation of the chapter 13 plan and on First Hawaiian Bank's motion for relief from the automatic stay. Raymond Cho represented debtor Mel D. Horner and Michael C. Bird and Jonathan W. Y. Lai represented First Hawaiian Bank. Based on the evidence, the court makes the following

**FINDINGS OF FACT:**

1. Mr. Horner lives at 1340 Hooli Circle, Unit A, Pearl City, Hawaii (the "Residence"). The Residence is part of the Holiday Park development, an area improved with numerous duplexes. The Residence is one of the duplex units. It has two bedrooms and one bathroom, contains 756 square feet of living space, and includes a garage shared with the other unit in the duplex. The Residence is a condominium unit, which means that it can be sold apart from the other unit in the

duplex.

2.	On June 4, 2008, First Hawaiian Bank ("FHB") made two loans to Mr. Horner.  The first loan (the "First Mortgage Loan") was in the original principal amount of $344,000 and is secured by a first priority mortgage on the Residence.  The second loan (the "Second Mortgage Loan") was in the original principal amount of $64,500 and is secured by a second priority mortgage on the Residence.

3.	FHB is the holder of, and a person entitled to enforce, the promissory notes evidencing the First Mortgage Loan and the Second Mortgage Loan and the mortgages securing those loans.

4.	On November 8, 2011 (the "Petition Date"), Mr. Horner filed the petition commencing this case.

5.	On April 23, 2012, Mr. Horner filed an amended chapter 13 plan and a motion to value the Residence.  The amended plan treats FHB's Second Mortgage Loan as a wholly unsecured claim.  FHB timely objected to confirmation, contending that the Residence is worth more than FHB's First Mortgage Loan and that therefore the Second Mortgage Loan must be treated as wholly secured.  FHB also filed a motion for relief from the automatic stay so it could foreclose both mortgages.

2

U.S. Bankruptcy Court - Hawaii   #11-02925   Dkt # 109   Filed 07/05/12   Page 2 of 8

6. As of the Petition Date, the amounts due and owing to FHB under the First Mortgage Loan and the Second Mortgage Loan were $362,571.74 and $66,004.54, respectively.

7. As of the Petition Date and as of the date of this decision, the fair market value of the Residence was less than $362,571.74. By fair market value, I mean what it would cost Mr. Horner to obtain a like asset for the same proposed use or, stated slightly differently, what price a willing buyer in the business, trade, or situation of Mr. Horner would pay a willing seller to acquire property of like age and condition.

   a. The debtor's appraiser opined that the Residence was worth $288,888 as of April 6, 2012. (There is no persuasive evidence that the value of the Residence has changed since the Petition Date.) The debtor's appraiser relied primarily on three prior sales of the Residence which occurred in 2003, 2004, and 2006. The report acknowledges that it is unusual to rely almost entirely on prior sales of the same property. In any event, the appraiser had to make large adjustments to the prior sale prices to reflect the long time between the comparable sales and the effective date of the appraisal. These adjustments are particularly difficult because the financial crisis and economic downturn of 2008 occurred in the meantime. The adjustments ranged from a twenty-one percent reduction (for

the 2006 sale) to a 110 percent increase (for the 2003 sale). Because adjustments to comparable sales are always a matter of the appraiser's subjective judgment, adjustments of this magnitude deserve careful scrutiny.

        b.       The debtor's appraiser adjusted the 2004 sale price upward by about thirty-six percent to reflect a change in the condition of the property, but did not explain why such a large adjustment was appropriate for the 2004 sale but not for the 2003 or 2006 sales.

        c.       The debtor's appraiser also relied on an active listing, at $360,000, of another unit in the same development as the Residence. That data must be used with caution, however, because (1) it is a listing, not a sale; (2) the listed unit is considerably larger than the Residence (it has 1,404 square feet, four bedrooms, and two bathrooms); and (3) the listing is a "short sale," meaning a sale for less than the amount of the liens against the property. Short sales tend to occur at depressed prices, because the seller is under unusual pressure to sell and some buyers are unwilling to deal with the complications and delay of obtaining the lender's agreement to accept less than the amount of the lender's claim.

        d.       FHB's appraiser opined that the fair market value of the Residence as of December 12, 2011, was $375,000. FHB's appraiser relied on sales of three properties which closed within six months of the effective date of

U.S. Bankruptcy Court - Hawaii   #11-02925   Dkt # 109   Filed 07/05/12   Page 4 of 8

the valuation. Therefore, no adjustment for time and changes in market conditions was required. The appraiser had to make large adjustments, however, because the physical characteristics of the selected comparables differ significantly from the Residence. All of the comparables are detached single family dwellings, not duplexes like the Residence; all of them are larger than the Residence, in terms of living area, land area, and number of rooms; none of them has a shared garage or carport like the residence; and none of them is a condominium. The adjustments ranged from twenty to twenty-six percent.

   e. Although FHB's appraiser opined that the "concluded value" of the Residence is $375,000, the appraiser also stated that, "[a]fter consideration for differences, evidences [sic] supports a market value for the [Residence] ranging from $356,500 to $381,500." [Underlining in original.] The appraiser did not explain why she selected a concluded value near the upper end of this range.

   f. The debtor also pointed to a recent listing of an entire duplex in the Holiday Park development at $675,000. The debtor argues that the Residence, which is the smaller of the two units in the duplex, is worth less than half of $675,000, or no more than $337,500. These data are relevant but must be used with some caution, however, because (1) it is a listing, not a completed sale; (2) neither appraiser has investigated the condition of the listed property or

5

evaluated the seller's motivations, and (3), as FHB's appraiser pointed out, a buyer of two duplex units may have an investment goal and therefore might be motivated differently than a typical buyer of a single duplex unit, who is probably interested in acquiring a residence for personal use.

       g.     Considering the strengths and weaknesses of both appraisers' testimony and all of the evidence in the record, I find that the fair market value of the Residence is in the lower end of the value range stated by FHB's appraiser, and is less than the unpaid balance as of the Petition Date of FHB's First Mortgage Loan.

Based on the foregoing findings of fact, the court makes the following

## CONCLUSIONS OF LAW:

1.     The court has jurisdiction over this chapter 13 case. The bankruptcy court has the authority to enter a final judgment on confirmation of a chapter 13 plan. Venue is proper.

2.     A chapter 13 plan may not modify a claim secured only by a security interest in real property that is the debtor's principal residence (other than by curing any default within a reasonable time). 11 U.S.C. § 1322(b)(2), (5). If a junior lien is wholly unsecured, however (meaning that the value of the collateral is less than the amount secured by senior liens), the plan may treat the claim as

U.S. Bankruptcy Court - Hawaii  #11-02925  Dkt # 109  Filed  07/05/12  Page 6 of 8

unsecured and provide for avoidance of the junior lien. Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1227 (9th Cir. 2002).

3.   Where a chapter 13 debtor proposes to retain encumbered property, the property's value for purposes of plan confirmation is "the cost the debtor would incur to obtain a like asset for the same proposed use," Associates Comm'l Corp. v. Rash, 520 U.S. 953, 965 (1997), or, stated more comprehensively, "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition . . . ." Id. at 959 n.2.

4.   Applying this standard, the value of the Residence, as of the Petition Date and today, was less than $362,571.74. Accordingly, the motion to value collateral should be granted, and the plan correctly treats the Second Mortgage Loan as unsecured and provides for avoidance of the lien.

5.   There are no other objections to confirmation of the plan. All other requirements for confirmation of the plan are satisfied.

6.   There is no cause to grant FHB's motion for relief from the automatic stay. Under the plan, FHB's secured claim is adequately protected and all of its claims are treated correctly.

Counsel for the debtor shall submit proposed orders (1) granting the debtor's motion to value the Residence at less than $362,571.74 and allowing the

7

U.S. Bankruptcy Court - Hawaii   #11-02925   Dkt # 109   Filed  07/05/12   Page 7 of 8

secured portion of FHB's Second Mortgage Loan at zero, (2) confirming the debtor's amended plan, and (3) denying FHB's motion from relief from the automatic stay.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **07/05/2012**